UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESUS JOSE PIZARRO REYES,

      Petitioner,

v.

Case No. 25-cv-12546

KEVIN RAYCRAFT, in his official
capacity as Immigration and Customs
Enforcement, Acting Director of
Detroit Field Office, Enforcement and
Removal Operations, et al.,

Honorable Robert J. White

      Respondents.

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS
## (ECF No. 2)

---

Petitioner Jesus Jose Pizarro Reyes filed for a writ of habeas corpus under § 2241. (ECF No. 2). Pizarro Reyes alleged that Respondents have detained him without a bond hearing in violation of the Immigration and Nationality Act (INA), and that his continued detention without a hearing violates his Fifth Amendment right to Due Process. (*Id.* at PageID.41–42).

Respondents include Kevin Raycraft, the Acting Director of the Detroit Field Office of the Immigration and Customs Enforcement's (ICE) Enforcement and Removal Operations division, Department of Homeland Security (DHS) Secretary Kristi Noem, DHS, United States Attorney General Pamela Bondi, and the Executive

Office for Immigration Review (EOIR). (*Id.* at PageID.32–33). Pizarro Reyes sued the individual defendants in their official capacity. (*Id.*).

Respondents claimed that Pizarro Reyes' detention is not unlawful. (ECF No. 4, PageID.56). Rather, the applicable statute, 8 U.S.C. § 1225(b)(2)(A)[1], mandates Pizarro Reyes' detention pending the outcome of his removal proceedings. (*Id.* PageID.70). Respondents also asked the Court to refrain from deciding the merits of the petition until Pizarro Reyes administratively exhausts his claims. (*Id.* at PageID.73–75).

In his petition and reply, Pizarro Reyes argued that § 1225(b)(2)(A) does not govern his detention. (ECF No. 2, PageID.38; ECF No. 6, PageID.112–121). That is, the Court should interpret § 1225, and its subsection (b)(2)(A), as applying to recently arrived noncitizens or those apprehended at a border or port of entry. (ECF No. 2, PageID.38; ECF No. 6, PageID.112–14). Because Pizarro Reyes arrived decades ago and has since then lived in the United States without seeking lawful admission, he instead falls within § 1226(a)'s catchall provision for the removal of noncitizens. (ECF No. 2, PageID.28–30; ECF No. 6, PageID.120). According to Pizarro Reyes, the language of both §§ 1225(b)(2)(A) and 1226(a), in addition to

---

[1] Congress enacted the detention provisions at §§ 1226(a) and 1225(b)(2) through the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585.

§ 1226(a)'s legislative history and practical application, support his position. (ECF No. 6, PageID.112–21).  Thus, Pizarro Reyes is entitled to a bond redetermination hearing under § 1226(a) and its implementing regulations. (ECF No. 2, PageID.29–30, 33; ECF No. 6, PageID.112–116).  Pizarro Reyes also asked the Court to waive any administrative exhaustion requirements. (ECF No. 6, PageID.123–26).

The Court held a hearing on Pizarro Reyes' petition on September 8, 2025. The Court reviewed the parties' briefing in addition to any supplemental authority filed on the docket.  For the reasons stated below, the Court will waive administrative exhaustion given that the petition presents a legal question appropriate for the Court to decide, and that the significant delays inherent in the Board of Immigration Appeals (BIA) appeal system mean Pizarro Reyes likely faces prolonged detention otherwise.  And based on the Court's statutory interpretation of §§ 1225(b)(2)(A) and 1226(a) and § 1226(a)'s history, the Court finds that § 1226(a), and not § 1225(b)(2)(A), governs Pizarro Reyes' detention.  As a result, the Court will grant Pizarro Reyes' petition and order the Respondents to provide Pizarro Reyes' with a bond redetermination hearing within seven days of this Order or otherwise release him.  In addition, the Court will dismiss all Respondents except for Pizarro Reyes' immediate custodian, Acting ICE Field Office Director of Enforcement and Removal Kevin Raycraft.

## I.    Background

Pizarro Reyes is a Mexican citizen who arrived in the United States in 2005 and has lived here since. (ECF No. 2, PageID.32, 38–39; ECF No. 4-2, PageID.92). When Pizarro Reyes entered the United States, immigration officers did not inspect him at a port of entry, and did not lawfully admit nor parole him. (ECF No. 4-2, PageID.92).    Pizarro Reyes did not challenge that he is in the United States unlawfully. (ECF No. 4, PageID.64).

ICE arrested Pizarro Reyes on June 26, 2025 in Detroit, Michigan. (ECF No. 2, PageID.38; ECF No. 4-2, PageID.92).  After his arrest, ICE detained and initiated removal proceedings against Pizarro Reyes by filing a Form I-862, Notice to Appear (NTA). (ECF No. 4-2, PageID.92).    The Form I-862 charged him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). (ECF No. 2, PageID.39).  At the same time, ICE Enforcement and Removal Operations (ERO) served Pizarro Reyes with a Form I-200, Warrant or Arrest of Alien, and a Form I-286, Notice of Custody Determination. (ECF No. 4-2, PageID.93).  Although the documents cited § 1226 as the authority for Pizarro Reyes' detention, ICE ERO instead detained Pizarro Reyes under § 1225. (*Id.*).  Respondents claimed the discrepancy was due to the fact that the pre-existing form lists only § 1226 as a reason for detention and offers no field to select additional or alternative bases for detention. (*Id.*).  Pizarro Reyes has been

4

in immigration detention since his arrest and is currently housed at the Calhoun County Correctional Facility. (ECF No. 2, PageID.28, 32).

In addition to the charge for entering the United States without inspection under § 1182(a)(6)(A)(i), DHS brought another charge on July 9, 2025 for inadmissibility under § 1182(a)(7)(A)(i)(I) based on Pizarro Reyes' lack of a valid entry document at the time he entered the United States. (ECF No. 4-2, PageID.92–93).  Pizarro Reyes's arrest required him to appear for removal proceedings before the Detroit Immigration Court pursuant to 8 U.S.C. § 1229a. (ECF No. 2, PageID.39).

On July 10, 2025, an Immigration Judge (IJ) granted Pizarro Reyes' bond request. (*Id.* at PageID.28).  DHS reserved appeal and obtained an automatic and administratively unreviewable stay of the bond order. (*Id.*).  Concurrently, on July 8, 2025, DHS, in conjunction with the Department of Justice (DOJ), issued a new policy instructing all ICE employees to consider any noncitizen inadmissible under § 1182(a)(6)(A)(i) as subject to mandatory detention under § 1225(b)(2). (*Id.*).  Section 1182(a)(6)(A)(i) makes any "alien present in the United States without being admitted or paroled" inadmissible.

On August 5, 2025, the IJ reversed his decision on Pizarro Reyes' bond in a written memorandum. (ECF No. 2-3, PageID.49–52).  The IJ found that it did not

have jurisdiction to hear Pizarro Reyes' bond redetermination request because the plain reading of § 1225(b)(2)(A) mandated Pizarro Reyes' detention. (*Id.* at PageID.50). Pizarro Reyes' habeas petition challenged the IJ's denial of his bond redetermination. (ECF No. 2, PageID.30).

In addition to his habeas petition, Pizarro Reyes applied for cancellation of his removal under INA § 240A(b)(1). (ECF No. 4-2, PageID.95). The hearing on his cancellation request is scheduled for September 16, 2025. (*Id.*).

## II.     Legal Standard

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. § 2243.

## III.    Analysis

### A.      Waiver of Administrative Exhaustion is Warranted.

Respondents argued that Pizarro Reyes must appeal the IJ's denial of his bond before the Court can consider the merits of his habeas petition. (ECF No. 4, PageID.72). In response, Pizarro Reyes asked the Court to waive any exhaustion

requirements because an appeal would cause "intolerable delay" and be ultimately futile. (ECF No. 6, PageID.123).

Here, no applicable statute or rule mandates administrative exhaustion. Whether to require exhaustion is thus within the district court's "sound judicial discretion." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted). Otherwise referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), a court-made exhaustion rule must comport with the statutory scheme and congressional intent. *Shearson*, 725 F.3d at 593–94. The Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention. *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25CV01621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025). As a result, some courts in this circuit apply Ninth Circuit precedent, but are split on the outcome. *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4–5 (E.D. Mich. Aug. 29, 2025); *Villalta v. Greene*, No. 4:25-cv-01594, 2025 WL 2472886, at *2 (N.D. Ohio Aug. 5, 2025); *Hernandez*, 2025 WL 2444114, at *8–10.

But even if a court would ordinarily enforce prudential exhaustion, it may still choose to waive such exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4. For example, when the "legal question is fit for resolution and delay means hardship," a court may choose to decide the issues itself. *Shalala v. Ill. Council on Long Term*

*Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted).  A court may also excuse exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).  Here, Pizarro Reyes did not dispute that prudential exhaustion applies but instead asked the Court to waive the requirement. (ECF No. 6, PageID.123–26).  So even if prudential concerns merited exhaustion, the Court finds that waiver is appropriate.

To start, the legal question is fit for resolution.  The habeas petition requires the Court to decide whether § 1226(a) or § 1225(b)(2)(A) applies to Pizarro Reyes. (ECF No. 2, PageID.29–30).  To answer the question, the Court must determine how the two sections interplay with one another.  The Court must also determine whether the terms "applicant for admission" or "seeking admission" in § 1225 include noncitizens who have lived in the United States illegally for years but never sought lawful status.  Ultimately, the issue boils down to a matter of statutory interpretation. And matters of statutory interpretation belong historically within the province of the courts. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citing *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)).

Pizarro Reyes also faces significant hardship should the Court refrain from deciding the issue in favor of advancing an appeal with the BIA.  Courts may waive exhaustion requirements when an administrative remedy is subject to "an unreasonable or indefinite timeline." *McCarthy v. Madigan*, 503 U.S. 140, 147

8

(1992).  Bond denial appeals "typically take six months or more to be resolved at the BIA." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wa. 2025).  Six months of further, and potentially unnecessary, incarceration is significantly longer than the thirty days the Sixth Circuit rejected as "unreasonable" or "indefinite" in *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020).  Plus, the "delays inherent" in the BIA's administrative process "would result in the very harm that the bond hearing was designed to prevent," that is, prolonged detention without due process. *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation omitted); *see also Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299,  at *5 (D. Mass. July 7, 2025) (finding the "prolonged loss of liberty" from "several additional months" in possibly unlawful detention would "constitute irreparable harm").  The prevention of six months or more of unlawful detention thus outweighs the interests the BIA might have in resolving Pizarro Reyes' appeal of his bond determination.

Further, Pizarro Reyes must, at present, prepare for his cancellation of removal hearing and possible appeal while detained.  Accordingly, Pizarro Reyes lacks the same unfettered access to attorneys, witnesses, evidence, and even basic technology like computers or cellphones, as he would have on bond. *See Rodriguez*, 779 F. Supp. 3d at 1254 (finding further unnecessary detention harmed plaintiff's ability to gather evidence and prepare case against deportation).  Because the Court can decide now whether or not he is entitled to a bond redetermination hearing,

Pizarro Reyes could be released within a few weeks as compared to the anticipated half-year wait through the BIA appeal route.  If the Court requires administrative exhaustion, Pizarro Reyes faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his removal. As a result, the Court will waive administrative exhaustion.[2]

### B.    Section 1226(a) Applies to Pizarro Reyes' Detention.

Pizarro Reyes argued that § 1225(b)(2) does not apply to him as he is not a recent arrival nor is he seeking admission. (ECF No. 2, PageID.37–38).  His continued detention under § 1225(b)(2) is therefore unlawful. (*Id.* at PageID.41). Instead, as a noncitizen who previously entered the United States and lived here for decades before his arrest by ICE, § 1226(a) governs his detention. (*Id.*). Accordingly, Pizarro Reyes is entitled to a bond redetermination hearing. (*Id.* at PageID.30).

Respondents argued in response that Pizarro Reyes is properly detained under § 1225(b)(2)(A). (ECF No. 4, PageID.75–76).  That is, because Pizarro Reyes did not enter the country lawfully, he is still considered an "applicant for admission" or "seeking admission" under § 1225. (*Id.* at PageID.75–78).  Section 1226(a) is

---

[2] Because the Court finds ample reasons to waive prudential exhaustion already, it will not consider Pizarro Reyes' argument that an appeal is futile.

reserved for those who do not fall within the confines of § 1225(b)(2)(A), namely, noncitizens who entered the country lawfully. (*Id.* at 82–83).

After reviewing the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades, the Court finds that Pizarro Reyes falls within the confines of § 1226(a), and not § 1225(b)(2)(A).  As a result, Pizarro Reyes is entitled to a bond redetermination hearing.

### 1. Principles of Statutory Interpretation Show § 1226(a) Applies to Pizarro Reyes.

At the crux of the parties dispute is whether the terms "applicant for admission" and "seeking admission" in § 1225 cover Pizarro Reyes. (ECF No. 4, PageID.77; ECF No. 6, PageID.117–20).  If they do, then the statute mandates Pizarro Reyes' detention until the conclusion of his removal proceedings.  If they do not, then Pizarro Reyes falls within § 1226(a)'s catchall for noncitizens apprehended and detained, and he is entitled to a bond redetermination hearing.

When interpreting a statute, "the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)); *see also King v. Burwell*, 576 U.S. 473, 486 (2015). But often "the 'meaning – or ambiguity – of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)).

The text of § 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13).  As relevant here, § 1225(b)(2)(A) allows an immigration officer to detain an applicant for admission under § 1229a if the noncitizen "is not clearly and beyond a doubt entitled to be admitted."  Section 1226(a) is less specific.  It authorizes the detention of a noncitizen "[o]n a warrant issued by the Attorney General" pending removal proceedings. § 1226(a).  At issue is whether "an alien present in the United States who has not been admitted" includes an individual that intentionally avoided lawful entry, like Pizarro Reyes.

Here, the statutory text does not provide a definitive answer as to what it means to be present without admittance where, as here, the individual has already entered and spent decades living in the United States.  And even if the terms are unambiguous, context still matters. *Yates v. United States*, 574 U.S. 528, 537 (2015) (emphasizing the importance of context even when a statutory term is unambiguous). The Court thus turns to § 1225(b)(2)(A)'s contextual clues. *See King*, 576 U.S. at 486.  The Court finds that the overall context of § 1225 limits the scope of the terms "applicant for admission" and "seeking admission" in § 1225(b)(2)(A).  "It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to

be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).  To start, giving effect to each clause and word of a statute includes an analysis of the statute's title.  The title of § 1225 is revealing: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added).  The use of "arriving" to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States.  This reading is bolstered by the fact that § 1225 clearly establishes an inspection scheme for when to let noncitizens into the country. *See* § 1225; *see Dubin v. United States*, 599 U.S. 110, 121 (2023) ("a title 'is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest'") (quoting *Yates*, 574 U.S. at 552 (Alito, J., concurring in judgment)).  In fact, the subheading for § 1225(b)(2)(A) reads "Inspection of Other Aliens," reinforcing the idea that the subsection applies to those coming in, not already present.

The statute also explicitly addresses its effect on "stowaways" and "crewm[e]n," words that suggest arrival at a border or port of entry.[3]  That Congress separated removal of arriving aliens from its more general section for "Apprehension

---

[3] Respondents conceded that the term "'applicant for admission' evokes a noncitizen walking up to a customs officer and formally requesting admission at a port of entry" based on the dictionary definition of "applicant." (ECF No. 4, PageID.77).

and detention of aliens," § 1226, implies that Congress enacted § 1225 for a specific, limited purpose. *See Dubin*, 599 U.S. at 122.  Considering § 1225 in its entirety, then, the Court may infer that the terms "applicant for admission" and "seeking admission" do not implicate noncitizens like Pizarro Reyes.  Pizarro Reyes lived in the United States for twenty years, never sought admission, and was not arrested when attempting to cross the border or pass through a port of entry illegally. (ECF No. 2, PageID.39; ECF No. 4-2, PageID.92).

Section 1225's place in the overall statutory scheme also supports the Court's reading. *King*, 576 U.S. at 486 (holding courts are meant to "construe statutes, not isolated provisions") (citation omitted).   Whereas  § 1225  governs  removal proceedings for "arriving aliens," § 1226(a) serves as a catchall.  As the Supreme Court in *Jennings v. Rodriguez* explained, § 1226(a) is the "default rule" and "applies to aliens already present in the United States." 583 U.S. 281, 288, 301 (2018).[4]  The inclusion of both provisions in the overall statute is likely no coincidence, but rather a  way  for  Congress  to  capture  noncitizens  who  fall  outside  of  the  specified categories.  And ultimately, Pizarro Reyes and the circumstances of his arrest align with § 1226(a), not § 1225(b)(2)(A).

---

[4] The Court cites *Jennings* because it acknowledges § 1226(a) as the default rule. But the Supreme Court did not rule on whether non-admitted or inadmissible aliens fell within boundaries of § 1226(a) as opposed to § 1225(b)(2)(A).

The recent amendment to § 1226 also renders Respondent's interpretation of § 1225(b)(2)(A) superfluous. *See Gomes*, 2025 WL 1869299, at *6–7. Congress amended § 1226 this year via the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025). The Laken Riley Act added subsection § 1226(c)(1)(E), which mandates detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes. § 1226(c)(1)(E)(i)–(ii). Considering that § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled," and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well. *Gomes*, 2025 WL 1869299, at *7. That is, because an alien present in the United States without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them. *Id.*; *see Marx v. Gen. Rev. Corp.*, 568 U.S 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"). As a district court in Massachusetts explained, "[s]uch an interpretation

would largely nullify a statute Congress enacted this very year, [and] must be rejected." *Gomes*, 2025 WL 1869299, at *7.

Respondents misplaced their reliance on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020) to support their argument that any noncitizen who entered unlawfully should be considered as perpetually "seeking admission." (ECF No. 4, PageID.77). *Thuraissigiam* held that "aliens who arrive at ports of entry – even those paroled elsewhere in the country for years pending removal – are treated for due process purposes as if stopped at the border." 591 U.S. at 139. Pizarro Reyes was not arriving at a port of entry when arrested, nor was he paroled elsewhere. And Respondents' argument that Pizarro Reyes' apprehension in Detroit, a city that shares its border with Canada, is similarly unavailing. (ECF No. 4, PageID.80). To recognize every noncitizen who lives near an international border as subject to § 1225's mandatory detention would unreasonably enlarge the statutory meaning. The Court will decline to read the statute so expansively given Congress gave no clear authority to do so.

In its memorandum, the IJ cited a recent BIA decision, *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), as to why it lacked jurisdiction to review Pizarro Reyes' bond redetermination request. (ECF No. 2-3, PageID.50–51). But the Court here is not bound by the BIA's interpretation of § 1225(b)(2)(A). *See Loper Bright*, 603 U.S. at 413 ("[C]ourts need not and under the APA may not defer to an agency

interpretation of the law simply because a statute is ambiguous."). And it is not entirely clear to the Court that the BIA's decision in *Q. Li* warrants the same result here. The facts, notably, are different. In *Q. Li*, DHS arrested respondent at the border after she had crossed and granted her parole. 29 I&N Dec. at 67. Respondent's parole conditions required her to report regularly to DHS offices. *Id.* But two years into her parole, DHS arrested respondent after discovering she was wanted for travel document forgery and human smuggling crimes in Spain. *Id.*

Here, ICE arrested Pizarro Reyes twenty years after he first arrived in the United States. (ECF No. 2, PageID.38; ECF No. 4-2, PageID.92). ICE detained and charged him with inadmissibility under § 1182(a)(6)(A)(i). (ECF No. 4-2, PageID.92). At the same time, ICE EOR served Pizarro Reyes with a Form I-200, Warrant or Arrest of Alien and a Form I-286, Notice of Custody Determination. (*Id.* at PageID.93). Taking § 1226(a) at face value, Pizarro Reyes' arrest and detention via warrant falls within the statute's strictures given the warrant.

Respondents also offered the BIA's opinion in *In the Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025), issued just days ago, as persuasive supplemental authority. (ECF No. 11; ECF No. 11-1). The BIA in that case concluded decisively that § 1225(b)(2)(A) covers inadmissible noncitizens who lived unlawfully in the United States for longer than two years without apprehension. (ECF No. 11-1, PageID.166–67). The BIA's statutory analysis reached the opposite conclusion from

17

the Court's here. (*Id.* at PageID.168–76).  But, again, the Court is not bound by the BIA's interpretation. *Loper Bright*, 603 U.S. at 413.  And the Court respectfully disagrees with how the BIA reads §§ 1226(a) and 1225(b)(2)(A) in conjunction with one another.

In *Hurtado*, the BIA characterized as a "legal conundrum" the idea that a noncitizen's continued unlawful presence means they are not "seeking admission." (ECF No. 11-1, PageID.169).  The Court, however, finds it difficult to square a noncitizen's continued presence with the term "seeking admission," when that noncitizen never attempted to obtain lawful status. This is especially true in light of § 1225's statutory context.  The BIA also argued that § 1225(b)(2)(A) does not render superfluous the Laken Riley Act. (*Id.* at PageID.169–70).  But as explained above, considering both §§ 1225(b)(2)(A) and 1226(c)(1)(E) mandate detention for inadmissible citizens, whether one includes additional conditions for such detention does not alter the redundant impact. *Supra* pp. 14–16. Overall, the Court is not persuaded by the statutory interpretation advanced by the BIA.

Finally, the BIA's decision to pivot from three decades of consistent statutory interpretation and call for Pizarro Reyes' detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation.  At least a dozen federal courts concur generally with this Court's interpretation of the statutory language as applied in this context. *See Gomes*,

2025 WL 1869299, at *5–6; *Rodriguez*, 779 F. Supp. 3d at 1255–60; *Vasquez Garcia v. Noem*, No. 25-cv-02180 (S.D. Ca. Sept. 3, 2025)[5]; *Lopez-Campos v. Raycroft*, 2025 WL 2496379; *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025); *Rosado v. Figueroa et al.*, No. 2:25-cv-02157-DLR, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Gonzalez et al. v. Noem et al.*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero v. Hyde, et al.*, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Benitez et al. v. Noem et al.*, No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).  In fact, at the hearing, respondents could not identify any federal court that has adopted their novel reading of § 1225(b)(2)(A) as applying to noncitizens like Pizarro Reyes.

---

[5] Pizarro Reyes filed this very recent order as supplemental authority on the docket. (ECF No. 10-1).

Thus, when taken into consideration alongside the history of § 1226(a) and its application, it is clear that § 1226(a) governs Pizarro Reyes' detention, not § 1225(b)(2)(A).

> **2.    Section 1226(a)'s History and Previous Application Lend Credence to the Court's Interpretation.**

As explained in *Rodriguez*, the legislative history behind § 1226 indicates that the statute applies to noncitizens that "reside in the United States but previously entered without inspection." 779 F. Supp. 3d at 1260.

> Before IIRIRA passed, the predecessor statute to Section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. *See* 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability ... any [noncitizen] ... may, upon warrant of the Attorney General, be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) ("A deportation hearing was the 'usual means of proceeding against a[ ] [noncitizen] already physically in the United States[.]' "). This predecessor statute, like Section 1226(a), included discretionary release on bond. *See* § 1252(a)(1) (1994) ("[A]ny such [noncitizen] taken into custody may, in the discretion of the Attorney General ... be continued in custody ... [or] be released under bond[.]"). Upon passing IIRIRA, Congress declared that the new Section 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[ ] [noncitizen] who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same).

*Id.* If § 1226(a) adopted the predecessor's authority to release noncitizens unlawfully present in the United States on bond, then Pizarro Reyes is entitled to discretionary release on bond as well.

20

Decades of consistent agency practice also support Pizarro Reyes' entitlement to a bond redetermination hearing under § 1226(a). (ECF No. 2, PageID.29, 35). The government's longstanding practices can inform the court's determination of what the law is. *Loper Bright*, 603 U.S. at 386.  Additionally, respect for Executive Branch interpretations of statutes may be "especially warranted" when the interpretation "was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.*

When the IIRIRA passed, EOIR drafted new regulations that provided: "[a]liens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."  Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997).  For almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception. (ECF No. 2, PageID.35). Accordingly, the Respondents' proposed statutory interpretation does not align with the executive branch's contemporaneous guidance when the IIRIA passed or with the expectations the guidance established.

In fact, ICE's own warrant and notice of custody determination forms reflect how entrenched the application of § 1226(a) is to noncitizens like Pizarro Reyes.

The documents list only § 1226 as authority for detention, do not reference § 1225, and offer no option for an alternative basis for arrest and detention. *See* ECF No. 4-2, PageID.93. Based on this, the Court may reasonably infer that the general applicability of § 1226(a) was woven into the fabric of ICE's operations. And in the Notice to Appear, ICE marked Pizarro Reyes as "present in the United States," and notably not as "arriving." (ECF No. 6-1, PageID.131). The fact that the Notice to Appear listed "arriving" and "present" as two distinct options, and that ICE selected "present," reinforces how novel Respondents' proposed statutory interpretation is.

Overall, the legislative history and agency guidance supports the argument that § 1226(a) applies to Pizarro Reyes. When considered in conjunction with the statutory interpretation, it is clear that Pizarro Reyes is entitled to a bond redetermination hearing.

### C.    Fifth Amendment Due Process

The Court will decline to decide the merits of Pizarro Reyes' due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a). If Respondents do not provide Pizarro Reyes with a bond redetermination hearing or release him within the time allotted, Pizarro Reyes may renew his Fifth Amendment Due Process claim.

### D.    The Court will Dismiss All Respondents Except ICE Field Office Director Kevin Raycraft.

Respondents asked the Court to dismiss the petition against all of them except Acting ICE Field Office Director Kevin Raycraft. (ECF No. 4, PageID.71).  A writ of habeas corpus "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243.  A detained noncitizen "must designate his immediate custodian" as respondent to his habeas corpus petition. *Roman v. Ashcroft*, 340 F.3d 314, 321 (6th Cir. 2003).  Courts interpret a detained noncitizen's immediate custodian as "the person exercising daily control over his affairs," such as "the warden of the facility where the alien is detained or the INS District Director of the district where the alien is being detained." *Id.* at 320.  The petitioner may name respondents other than his or her immediate custodian only in extraordinary or unusual circumstances. *See id.* at 320.

Here, Pizarro Reyes alleged that Raycraft is his immediate custodian. (ECF No. 2, PageID.32).  Pizarro Reyes also did not oppose the dismissal of all respondents except Raycraft. (ECF No. 6, PageID.112).  Because the Court finds that Raycraft is the proper respondent, it will dismiss all others from the petition.

\* \* \*

For the reasons given, the Court **ORDERS** that the petition for writ of habeas corpus (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide Pizarro Reyes with a bond hearing under § 1226(a) within seven days of this order or otherwise release him.

**IT IS FURTHER ORDERED** that all Respondents except for Acting ICE Field Office Director Kevin Raycraft are **DISMISSED**.

Dated: September 9, 2025                    s/Robert J. White_____
                                                         Robert J. White
                                                         United States District Judge

24